# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| COMMUNITY PHARMACIES OF INDIANA, INC., WILLIAMS BROTHERS HEALTH CARE PHARMACY, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:11-cv-0893-TWP-DKL |
| vs. | ) ) ) | |
| INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION and its Subdivision, THE OFFICE OF MEDICAID POLICY AND PLANNING, By and Through PATRICIA CASANOVA, Director, MICHAEL A. GARGANO, Secretary, and DAVID TESTERMAN, Director of Medicaid Pharmacy Program, in their Official Capacities, not Individually, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ENTRY ON TEMPORARY RESTRAINING ORDER

This matter is before the Court on Plaintiffs' Motion for a Temporary Restraining Order ("TRO").  There are two Plaintiffs in this matter: (1) Community Pharmacies of Indiana, Inc., a non-profit trade association that represents over 170 community pharmacies in Indiana; and (2) Williams Brothers Health Care Pharmacy, Inc., an independently-owned and operated pharmacy based in Washington, Indiana (collectively, "Plaintiffs").  For ease of reference, the multitude of Defendants in this matter will be referred to collectively as the State ("State").  Recently, the State used an emergency rulemaking procedure to lower the Medicaid dispensing fee paid to pharmacies from $4.90 to $3.00 – a 38% decrease (the "Fee Reduction").  The Fee Reduction went into effect on July 1, 2011.  Plaintiffs argue that the Fee Reduction is in violation of federal Medicaid law and will cause irreparable harm.  That is, not only will the Fee Reduction damage

Plaintiffs financially, it could drive many pharmacies away from Medicaid services altogether, thus harming Medicaid patients.  For the reasons set forth below, Plaintiffs' Motion for a TRO (Dkt. 12) is **GRANTED**.

## I.  LEGAL STANDARD

The standard for the issuance of a TRO is the same standard applied for the issuance of a preliminary injunction. *Crawford & Co. Medical Benefit Trust v. Repp* , 2011 WL 2531844, at *1 (N.D. Ill. June 24, 2011).  A preliminary injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 389 (7th Cir. 1984) (citation and internal quotations omitted). When a court is presented with a request for preliminary injunction, it considers multiple factors. As the Seventh Circuit has recognized, a party seeking to obtain a preliminary injunction must demonstrate: (1) "a likelihood of success on the merits," (2) "a lack of an adequate remedy at law," and (3) "a future irreparable harm if the injunction is not granted." *Reid L. v. Ill. State Bd. of Educ.*, 289 F.3d 1009, 1021 (7th Cir. 2002).  The court must then balance, on a sliding scale, the irreparable harm to the moving party with the harm an injunction would cause to the opposing party. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc*., 549 F.3d 1079, 1086 (7th Cir. 2008).  The greater the likelihood of success, the less harm the moving party needs to show to obtain an injunction, and vice versa. *Id*.  Finally, the court must consider the interest of and harm to nonparties that would result from a denial or grant of the injunction. *See Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994).  The decision to grant or deny a request for injunctive relief is not governed by a rigid, unbending formula.  As the Seventh Circuit has recognized, a court must "exercise its discretion to arrive at a decision

based on the subjective evaluation of the import of the various factors and a personal, intuitive sense about the nature of the case." *Girl Scouts of Manitou*, 549 F.3d at 1086 (citation and internal quotations omitted).

## II.  DISCUSSION

### A.    Background on Medicaid in Indiana

The Medicaid program, jointly funded by the states and the federal government, pays for medical services to low-income persons, including the elderly, the disabled, and families with children pursuant to state plans approved by the Secretary of the Department of Health and Human Services (hereinafter, "HHS"). *See* 42 U.S.C. § 1396a(a)-(b). As the Supreme Court has noted, Medicaid is a federal-state program that is "designed to advance cooperative federalism." *Wisconsin Dep't of Health & Family Servs. v. Blumer*, 534 U.S. 473, 495 (2002).

State participation in Medicaid is voluntary. But if a state opts to participate, and thus receive federal assistance, it must conform its Medicaid program to federal law. *See Blanchard v. Forrest*, 71 F.3d 1163, 1166 (5th Cir. 1996). A state electing to participate in Medicaid must submit a plan detailing how it will expend its funds. *Community Health Center v. Wilson-Coker*, 311 F.3d 132, 134 (2d Cir. 2002); *see also S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 586 (5th Cir. 2004) ("a state must submit to the [federal government] and have approved a 'state plan' for 'medical assistance' . . . that contains a comprehensive statement describing the nature and scope of the state's Medicaid program.") (citations omitted). From there, the Secretary of HHS reviews each plan to ensure that it complies with a long list of federal statutory and regulatory requirements. *See Wilson-Coker*, 311 F.3d at 134; 42 C.F.R. § 430.15(a). The Secretary of HHS delegates power to review and approve plans to Regional Administrators of the Centers for

3

Medicare and Medicaid Services. *See Wilson-Coker*, 311 F.3d at 134; 42 C.F.R. § 430.15(b).

Indiana participates in the Medicaid program and is therefore bound by its requirements. Ind. Code § 12-15-1-1, *et seq.* Specifically, the Office of Medicaid Policy and Planning, a subdivision of the Indiana Family and Social Services Administration ("FSSA"), is the state agency responsible for administering Indiana's Medicaid program. *Id.* Indiana's Medicaid program provides virtually all non-experimental, medically necessary healthcare services to low-income Hoosiers.

The State must reimburse pharmacies for services rendered to Medicaid beneficiaries. 405 IAC 5-24, *et seq.* Specifically, the State reimburses Indiana pharmacies participating in the Medicaid program for the physical cost of the prescription drug (the "ingredient cost"), plus a dispensing fee for each prescription filled. Plaintiffs maintain that even before the Fee Reduction, the dispensing fee was borderline inadequate; in some instances, pharmacies were already experiencing a net loss for each Medicaid prescription. According to Plaintiffs, the Fee Reduction will make a bad situation far worse and will force many pharmacies to reevaluate whether the provision of Medicaid services is compatible with a viable business model.

**B.      Reasonable Likelihood of Success on the Merits**

Plaintiffs make numerous arguments challenging the legality of the Fee Reduction. The Court finds one argument dispositive at this time. Specifically, the State's attempt to enforce the Fee Reduction without prior HHS approval violates federal Medicaid law.

**1.      Preemption**

"A fundamental principle of the Constitution is that Congress has the power to preempt state law." *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372 (2000) (citations

4

omitted). A preemption analysis requires an examination of congressional intent, and federal regulations have no less preemptive effect than federal statutes. *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-53 (1982). Central to the present motion, the federal Medicaid Act requires that amendments to the Indiana Medicaid plan be submitted and approved by HHS. 42 U.S.C. § 1396a(b); 42 § C.F.R. 430.10 *et seq*.

The State submitted the Fee Reduction amendment to HHS in April 2011, but HHS has not yet approved the amendment. In fact, on July 6, 2011, HHS indicated that it needs more information from the State before it can approve or disapprove the Fee Reduction. (Dkt. 23). Undeterred, the State is apparently marching forward with implementation of the Fee Reduction. From the Court's vantage point, the State's conduct is premature and irreconcilable with federal Medicaid law and is therefore preempted by the Supremacy Clause of the United States Constitution.

### 2. Do Plaintiffs have a right of action?

But there is an important wrinkle to this analysis. Specifically, in the Court's view, it is not altogether clear whether Plaintiffs have a right to enforce this provision. It is, after all, well-settled that "the Supremacy Clause, of its own force, does not create rights enforceable under § 1983." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 (1989) (internal citations omitted). Further, as the State notes, "No authority . . . supports the notion that providers have a right of action to enforce 42 U.S.C. § 1396a(b)," as this statute does not contain rights-creating language directed at Medicaid providers. (Dkt. 21 at 10) In the State's view, the remedy for a state's non-compliance with the Medicaid statutes only involves the federal government's purse strings, meaning a private right of action is an inappropriate

enforcement mechanism.

The Court, however, is not persuaded by the State's argument. Courts throughout the country – including the Supreme Court – have permitted preemption claims to proceed in a variety of contexts. For instance, the Supreme Court has reached the merits of a preemption claim concerning a statute enacted pursuant to Congress' spending clause authority. *See PhRMA v. Walsh*, 538 U.S. 644 (2003) (plurality opinion) (involving Medicaid Act). Although *PhRMA* was a plurality decision, "seven Justices assumed both that the federal courts have jurisdiction and that a claim was stated for spending clause preemption." *Planned Parenthood of Houston & Southeast Texas Tex. v. Sanchez*, 403 F.3d 324, 331-32 (5th Cir. 2005) (recognizing that Supreme Court implicitly rejected the contention "that asserting the preemptive force of federal Spending Clause legislation is itself no claim"); *see also PhRMA v. Thompson*, 362 F.3d 817, 819 n.3 (D.C. Cir. 2004) ("By addressing the merits of the parties' arguments without mention of any jurisdictional flaw, the remaining seven Justices appear to have *sub silentio* found no flaw.").

Further, the Seventh Circuit has recognized the availability of injunctive relief to enjoin state officers from implementing a rule or regulation that is preempted under the Supremacy Clause. *See Illinois Ass'n of Mortgage Brokers v. Office of Banks & Real Estate*, 308 F.3d 762, 765 (7th Cir. 2002). Other courts have reached similar conclusions. As the Ninth Circuit recently recognized, "[t]he Supreme Court has repeatedly entertained claims for injunctive relief based on federal preemption, without requiring that the standards for bringing suit under § 1983 be met." *ILCSC, Inc. v. Shewry*, 543 F.3d 1050, 1055-57 (9th Cir. 2008) (preliminary injunction issued ordering State to refrain from implementing a Medicaid rate reduction); *see also Puerto*

*Rico Tel. Co. v. Municipality of Guayanilla*, 450 F.3d 9, 15 (1st Cir. 2006) (finding no need to resolve whether federal statute provided a private cause of action because case was brought under the Supremacy Clause); *Lankford v. Sherman*, 451 F.3d 496, 509 (8th Cir. 2006) ("preemption claims are analyzed under a different test than section 1983 claims, affording plaintiffs an alternative theory for relief when state law conflicts with a federal statute or regulation.").

In the end, the Court believes that there is validity to Plaintiffs argument that they need not show that the Medicaid Act confers a private right of action to seek injunctive relief under the Supremacy Clause. Given this determination, the Court finds that Plaintiffs have a reasonable likelihood of success on the merits. *See Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999) (for purposes of a preliminary injunction, plaintiffs only need to demonstrate a "better than negligible chance of succeeding.") (citation and internal quotations omitted).

## C.    Irreparable Harm

In order to prevail on a motion for a preliminary injunction, Plaintiffs must establish that the denial of an injunction will result in irreparable harm. "'Irreparable' in the injunction context means not rectifiable by the entry of a final judgment." *Walgreen Co. v. Sara Creek Property Co.*, 966 F.2d 273, 275 (7th Cir. 1992) (citations omitted). At this preliminary stage of the proceedings and for the purposes temporary injunctive relief, the Court believes that Plaintiffs have satisfied this burden.

Significantly, because the State is the Defendant in this matter, the Plaintiffs cannot recover monetary damages due to the sovereign immunity afforded under the Eleventh Amendment. *See Kansas Health Care Ass'n, Inc. v. Kansas Dept. of Soc. & Rehab. Services.*, 31

F.3d 1536, 1543 (10th Cir. 1994) (upholding injunction of Medicaid rate reductions because providers would suffer irreparable injury); *Temple Univ. v. White*, 941 F.2d 201, 215 (3d Cir. 1991) ("As to the inadequacy of legal remedies, the Eleventh Amendment bar to an award of retroactive damages against the [state] clearly establishes that any legal remedy is unavailable and the only relief available is equitable in nature."); *Feinerman v. Bernardi*, 558 F. Supp. 2d 36, 51 (D.D.C. 2008) (where plaintiff cannot recover money damages from the defendant due to defendant's sovereign immunity, any loss suffered by plaintiff is deemed *per se* irreparable). If the Fee Reduction remains in effect, many pharmacies will continue to hemorrhage dollars, and will not be able to recoup those dollars in a garden-variety lawsuit. Further, logic dictates that the Fee Reduction will undoubtedly affect some pharmacies' ability to continue providing Medicaid services, given the thin margins that existed even prior to the Fee Reduction. Obviously, this harm could trickle down to Medicaid patients who constitute the poor, the elderly, the disabled and families with children, many of whom reside in rural areas with a dearth of other pharmacy options within close proximity. For these reasons, the Court believes that Plaintiffs have met the irreparable harm requirement.

### D.  Balance of Harms and Public Interest

Both sides have compelling arguments on these factors. The State emphasizes that the Fee Reduction was enacted due to budgetary constraints. Therefore, if the Fee Reduction is enjoined, FSSA would fall short of the $212 million budget reduction mandated by the Indiana General Assembly. Plaintiffs emphasize that the balance of harms tilts in their favor because the Fee Reduction could cause pharmacies to close, employees to be laid off, Medicaid services to cease, and, as a result of the latter, serious complications for Medicaid patients. The Ninth

8

Circuit has noted that when courts are faced with a conflict between financial concerns and preventable human suffering, they often "have little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). Overall, the Court believes that the balance of harms tilts in Plaintiffs's favor and that public interest analysis is effectively "a wash."

**E.    Bond**

The Court believes that a bond is not appropriate under the circumstances. *See, e.g., Pharm Soc. of State of New York, Inc. v. New York State Dept. of Soc. Services*, 50 F.3d 1168, 1174 (2d Cir. 1995) (waiving bond for pharmacy association that brought similar claim for injunctive relief against NY Medicaid statute). Moreover, the State does not make an argument to the contrary.

## III. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for a Temporary Restraining Order is **GRANTED**, thus temporarily enjoining Defendants from implementing and enforcing the Fee Reduction. The parties are ordered to meet with Magistrate Judge LaRue in room 243 on Tuesday, July 12, 2011 at 4:00 p.m. to determine a briefing schedule. A preliminary injunction hearing shall be held on Wednesday, August 24, 2011 at 2:00 p.m. in Courtroom 344, Birch Bayh Federal Building and United States Courthouse. Parties are allotted thirty minutes each for a total of one hour.

SO ORDERED:    07/08/2011

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

9

Copies to:

**Mark W. BIA**
KLIEG DEFAULT LP
mbina@kdlegal.com

**Matthew C. Uranic**
INDIANA ATTORNEY GENERAL
matt.branic@atg.in.gov,violet.engel@atg.in.gov,matt.branic@gmail.com

**Randall R. Fearnow**
KRIEG DEVAULT LLP
rfearnow@kdlegal.com

**Wade Dunlap Fulford**
Indiana Attorney General
wade.fulford@atg.in.gov,emily.davis@atg.in.gov

**Debra Ann Mastrian**
KRIEG DEVAULT LLP
dmastrian@kdlegal.com

**Scott Stuart Morrisson**
KRIEG DEVAULT LLP
smorrisson@kdlegal.com,csmith@kdlegal.com

**Kate E. Shelby**
INDIANA ATTORNEY GENERAL
kate.shelby@atg.in.gov,michelle.waire@atg.in.gov