UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

COMMUNITY PHARMACIES OF            )
INDIANA, INC., WILLIAMS BROTHERS   )
HEALTH CARE PHARMACY, INC.,        )
INDIANA PHARMACISTS ALLIANCE, INC. )
                                   )
    Plaintiffs,                    )
  vs.                             )       NO. 1:11-cv-00893-TWP-DKL
                                   )
INDIANA FAMILY AND SOCIAL          )
SERVICES ADMINISTRATION,           )
THE OFFICE OF MEDICAID POLICY      )
AND PLANNING,                      )
PATRICIA CASANOVA,                 )
MICHAEL A. GARGANO,                )
DAVID TESTERMAN,                   )
                                   )
    Defendants.                    )

**ENTRY ON EMERGENCY MOTION FOR STAY/INJUNCTION PENDING APPEAL**

    This matter is before the Court on Plaintiffs' "Emergency Motion for Stay/Injunction Pending Appeal" following the Court's decision denying Plaintiffs' request for a preliminary injunction. Recently, Defendants (collectively, the "State") used an emergency rulemaking procedure to lower the "dispensing fee" reimbursed to pharmacies for filling Medicaid prescriptions from $4.90 to $3.00 – a 38% decrease (the "Fee Reduction"). The Fee Reduction went into effect on July 1, 2011, and this lawsuit immediately followed. On July 8, 2011, the Court granted a temporary restraining order in favor of Plaintiffs, thus temporarily enjoining the State's implementation and enforcement of the Fee Reduction.

    The parties then re-briefed the issues in a much more comprehensive fashion and the Court held a preliminary injunction hearing on August 24, 2011. On September 14, 2011, the

1

Court – equipped with a more complete picture of the applicable law – denied Plaintiffs' motion for a preliminary injunction, ruling that the State was free to implement and enforce the Fee Reduction. Two days later, the State re-implemented the Fee Reduction. On September 22, 2011, Plaintiffs filed a Notice of Appeal. In conjunction with their appeal, Plaintiffs also filed this emergency motion asking the Court for a stay/injunction that: (1) prohibits the State from implementing and enforcing the Fee Reduction pending appeal; and (2) enjoins the State from seeking damages during the pendency of the appeal. For the reasons set forth below, Plaintiffs' Emergency Motion for a Stay/Injunction Pending Appeal (Dkt. 63) is **GRANTED** in part and **DENIED** in part.

*Legal Standard*

Requests for stays or injunctions pending appeal are governed by Fed. R. Civ. P. 62(c), which provides that "[w]hile an appeal is pending from an interlocutory order … that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c); *see also* Fed. R. App. P. 8(a) (providing that where a stay of an injunction pending appeal has been denied by a district court, the request for a stay may be renewed in the appellate court). Such a stay is generally considered "extraordinary relief" and the moving party bears a "heavy burden of proof." *Winston-Salem/Forsyth County Bd. of Educ. v. Scott,* 404 U.S. 1221, 1231 (1971) (Burger, C.J., in chambers). A decision concerning a stay pending appeal is similar in nature to a decision granting or denying a preliminary injunction. Specifically, to make a stay determination, a court must consider: (1) "whether the stay applicant has made a strong showing that he is likely to succeed on the merits" on appeal; (2) "whether the applicant will be irreparably injured absent a stay"; (3) "whether issuance of the stay will substantially injure the

other parties interested in the proceeding"; and (4) "where the public interest lies." *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987); *Glick v. Koenig,* 766 F.2d 265, 269 (7th Cir.1985).

*Discussion*

A. **Likelihood of Success**

The Court begins its analysis by, once again, assessing Plaintiffs' likelihood of success in this case. By denying the preliminary injunction, the Court has already expressed its view that, at this juncture of the proceedings, it believes Plaintiffs do not have a reasonable likelihood of success. The Court believes that Plaintiffs' appeal will, more likely than not, meet the same fate. Otherwise, the Court would have ruled differently. Nonetheless, the present motion puts the Court in the unique situation of assessing the likelihood that its decision denying the preliminary injunction was wrong and will be reversed on appeal.

Faced with this situation, sister district courts have astutely recognized that "a party seeking a stay need not show it is more than 50% likely to succeed on appeal; otherwise, no district court would ever grant a stay." *Westefer v. Snyder*, 2010 WL 4000599, at *3 (S.D. Ill. October 12, 2010) (quoting *Thomas v. City of Evanston*, 636 F. Supp. 587, 590 (N.D. Ill. 1986)). Therefore, "[i]t is enough that the movant have a substantial case on the merits." *Id.* As the Seventh Circuit has observed, "if the appeal has some though not necessarily great merit," then a showing of great harm "would justify the granting of an injunction pending appeal." *Cavel International, Inc. v. Madigan*, 500 F.3d 544, 547 (7th Cir. 2007). Thus, for purposes of this present motion, the Court will take this somewhat relaxed view of the "likelihood of success" prong. The Court is also mindful of the fact that, when it comes to injunctions, it should seek to "minimize the costs of being mistaken." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992) (citation and internal quotations omitted).

3

Along these lines, the Court would be remiss not to note that higher courts have seemingly sent mixed signals on the applicable standard to apply when confronted with a Rule 62 request for an injunction pending appeal. In *Hilton*, for instance, the Supreme Court stated that a stay of a district court's order pending appeal requires a "strong showing" that the appellant is likely to prevail. *Hilton,* 481 U.S. at 776; *Cavel*, 500 F.3d at 549 (Easterbrook, J., dissenting). The Seventh Circuit, however, has been amenable to employing a more modest standard. *Cavel*, 500 F.3d at 547 (employing a "some though not necessarily great merit" standard in the wake of a showing of a high magnitude of harm). In the end, though, this point is academic. Even erring on the side of absolute caution and applying a less rigorous "likelihood of success" standard, the Court still cannot find that Plaintiffs' appeal has a meaningful amount of merit when considering Seventh Circuit precedent.

As discussed in prior orders, Plaintiffs have advanced three arguments in favor of a preliminary injunction: (1) through the Fee Reduction, the State violated state and federal notice requirements; (2) the State's attempt to enforce the Fee Reduction without prior CMS approval violates federal law; and (3) the Fee Reduction violates Section 30(A) of the Medicaid Act.

First, Plaintiffs' notice-based arguments require little, if any, discussion. In denying the preliminary injunction, the Court observed that the State's implementation of the Fee Reduction was less than transparent. Importantly, however, it was not legally deficient under either state or federal law. Tellingly, Plaintiffs do not suggest that they will raise any notice-based arguments on appeal.

Second, Plaintiffs argue that an injunction is warranted because CMS approval is required *before* a state is permitted to implement a proposed amendment to its Medicaid plan. Simply stated, this argument is squarely contradicted by binding Seventh Circuit precedent. *See*

*Wisconsin Hosp. Association v. Reivitz*, 733 F.2d 1226, 1237 (7th Cir. 1984) ("proposed amendments may be implemented <u>before approval is received</u> from HHS") (emphasis added). Granted, *Reivitz* dealt with the now-repealed Boren Amendment. The Court, however, has already expressed its view that for purposes of the approval issue, this distinction is inconsequential.

Nonetheless, *Reivitz* aside, the regulations governing Medicaid make clear that CMS approval is not a prerequisite to implementation. Specifically, 42 C.F.R. § 430.18(e)(2) explains that if the Medicaid administrator reviews CMS's initial decision and determines that it was incorrect, then "CMS pays the State a lump sum equal to any funds incorrectly denied." Obviously, this regulation presupposes that a state will go ahead and implement the unapproved plan amendment. Otherwise, CMS wouldn't need to reimburse the state.

On this point, the State has offered evidence which unequivocally demonstrates that implementation may occur prior to approval. For instance, Indiana recently implemented a 5% Medicaid rate reduction for podiatrists and chiropractors. The proposed rate reduction was submitted to CMS on December 17, 2010. The reduction was implemented on January 1, 2011. Notably, however, CMS did not actually approve the rate reduction until March 17, 2011. From there, the State received federal funding dating back to the effective date of January 1, 2010. And, as the State's evidence also shows, this instance was not an aberration. (Dkt. 59-1 at 2). In sum, real world experience, the operative regulations, and, most importantly, binding Seventh Circuit precedent all support the view that Plaintiffs will not succeed on this argument.

Finally, Plaintiffs argue that the Fee Reduction violates Section 30(A) of the Medicaid Act. Again, binding precedent defeats Plaintiffs' argument. In *Methodist Hospitals, Inc. v. Sullivan*, 91 F.3d 1026 (7th Cir. 1996), the Seventh Circuit made clear that, in the context of

Section 30(A), *post-implementation results* – not pre-implementation motivations, processes, or predictions – are of singular importance.  On this point, the Seventh Circuit taught that "<u>states may behave like other buyers of goods and services in the marketplace: they may say what they are willing to pay and see whether this brings forth an adequate supply.</u>" *Id*. at 1030 (emphasis added); *see also American Society of Consultant Pharmacists v. Garner*, 180 F. Supp. 2d 953, 969 (N.D. Ill. 2001) ("a provider may not prove a Section 30(A) violation merely by criticizing a state's procedure in implementing a revised rate, or by predicting a diminished level of access and quality of care . . . The Seventh Circuit made clear that <u>a claim under Section 30(A) will stand or fall based on proof of the actual results of a reimbursement plan</u>.") (emphasis added). From there, the state must monitor the situation "to check predictions against reality," and if the price does not bring forth an adequate supply, the state "must[] raise the price until the market clears." *Methodist Hospitals*, 91 F.3d at 1030.

To accomplish this, obviously, a state must be given the opportunity to implement its proposed reductions.  Granting an injunction under these circumstances would preclude states from "check[ing] predictions against reality," thus contravening the essence of *Methodist Hospitals*.  This point has been driven home by the Northern District in a thorough and well-reasoned opinion. *See Garner*, 180 F. Supp. 2d at 972-73 (denying preliminary injunction under similar circumstances; "[a]nd what *Methodist Hospitals* teaches is that in deciding among the conflicting claims about whether the reimbursement rate is sufficient to satisfy that standard, <u>the test is not what is predicted but rather what happens – which is nothing more than the application of the adage that actions speak louder than words</u>.") (emphasis added); *see also Molina Healthcare of Ind. v. Henderson*, 2006 WL 3518269, at *11-12 (S.D. Ind. Dec. 4, 2006); *Indiana Family & Social Services Admin. v. Walgreen Co.*, 769 N.E.2d 158 (Ind. 2002) (reversing

6

preliminary injunction after Indiana used emergency rulemaking procedure to reduce drug reimbursement rates and decrease the dispensing fee paid to pharmacies, despite the plaintiff's argument that a reduction in the dispensing fee would cause a handful of pharmacies to close).

Despite this authority, Plaintiffs argue that *Methodist Hospitals* is distinguishable. Unfortunately, Plaintiffs have not explained how or why it is substantively different than the present circumstances. Plaintiffs also argue that applying *Methodist Hospital* in the present procedural context leads to unfair results because it eliminates the possibility of prospective relief. But this is not necessarily true. As *Garner* acknowledged, perhaps "one would not need to await the marketplace's answer to the adequacy of a rate that was so unreasonable on its face (for example, zero) that it inevitably would fail to attract sufficient supply." *See Garner*, 180 F. Supp. 2d at 976. As discussed in the Court's previous order, the State has brought forth evidence establishing that the Fee Reduction was not arbitrary, capricious, or, worse still, unreasonable on its face. Moreover, even if Plaintiffs are barred from seeking prospective relief and post-implementation damages due to the Eleventh Amendment, they could still potentially seek post-implementation injunctive relief, should access problems stemming from diminished supply come to fruition. Overall, Plaintiffs' argument essentially invites the Court to ignore or, at the very least, sidestep the crux of the Seventh Circuit's decision in *Methodist Hospitals*.

As a final argument, Plaintiffs contend that even if *Methodist Hospitals* is on-point, it can and should be overturned. The Seventh Circuit requires "a compelling reason to overturn circuit precedent." *U.S. v. Kendrick*, 647 F.3d 732, 734 (7th Cir. 2011) (citation and internal quotations omitted). On this point, the Seventh Circuit holds itself to stringent standards: "principles of stare decisis require that we give considerable weight to prior decisions of this court unless and until they have been overruled or undermined by the decisions of a higher court or other

supervening developments, such as a statutory overruling." *Santos v. U.S.*, 461 F.3d 886, 891 (7th Cir. 2006) (citations and internal quotations omitted). Pointing to the Ninth Circuit, Plaintiffs argue that a circuit split is sufficiently compelling to warrant reversal. Indeed, "[o]ther circuits' rejection of [the Seventh Circuit's] position provides one such compelling reason" to overturn its own precedent. *Russ v. Watts*, 414 F.3d 783, 788 (7th Cir. 2005). But, in the Court's view, granting an injunction on the conceivable possibility that the Seventh Circuit will reverse course would effectively eviscerate the principle that a stay is considered "extraordinary relief" and the moving party bears a "heavy burden of proof." *Scott*, 404 U.S. at 1231. In sum, while Plaintiffs would like to characterize *Methodist Hospitals* as a mere inconvenience, the Court finds it to be an impenetrable barrier to their success.

As a final matter, it is worth noting (although the Court's decision certainly doesn't rest on this argument) that the Supreme Court will soon address whether Plaintiffs have a viable cause of action at all. In *Maxwell-Jolly v. Independent Living Center of Southern California, Inc.*, 131 S. Ct. 992 (2011) (granting certiorari),[1] the Supreme Court will determine whether Medicaid recipients and providers may maintain a cause of action under the Supremacy Clause to enforce 42 U.S.C. § 1396a(a)(30)(A) by asserting that the provision preempts a state law. Petition for Writ of Certiorari at ii, *Maxwell-Jolly*, 2010 WL 599171 (Feb. 16, 2010) (No. 09-958). It has become well-settled that private parties cannot enforce Section 30(A) using 42 U.S.C. § 1983. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002) ("unless Congress speaks with a clear voice, and manifests an unambiguous intent to confer individual rights, federal funding provisions provide no basis for private enforcement"); *Sanchez v. Johnson*, 416 F.3d 1051, 1059-60 (9th Cir. 2005) (Section 30(A) does not meet the criteria for private enforcement

---

[1] The name *Maxwell-Jolly* has since been replaced in the caption with *Douglas* – California's new director of the Department of Health Care Services.

because it confers no "rights" on providers or beneficiaries and is "ill-suited" for judicial enforcement); *see also Long Term Care Pharmacy Alliance v. Ferguson*, 362 F.3d 50 (1st Cir. 2004); *N.Y. Ass'n of Homes & Servs. for the Aging, Inc. v. DeBuono*, 444 F.3d 147 (2d Cir. 2006). Plaintiffs concede that § 1983 is a dead-end, but nonetheless contend that, alternatively, they can rely on the Supremacy Clause to pursue this action.

However, there is a strong argument to be made that this strategy – using the Supremacy Clause in lieu of §1983 – allows an inappropriate end-run around the Supreme Court's § 1983 jurisprudence, especially in the context of spending clause legislation. As the Supreme Court has noted, "[i]n legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 28 (1981). Thus, the remedy for noncompliance with the Medicaid Act, the argument goes, is the federal government's ability to turn off the funding spigot – not an action anchored in the Supremacy Clause, which in itself does not confer rights. *See Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103 (1989) (Supremacy Clause does not of its own force create rights enforceable under § 1983). This Court has never embraced this argument. As explained in previous orders, the Court believes that binding cases support the view that a claim under the Supremacy Clause is distinct from a claim under § 1983. That said, these various factors serve to illustrate just how many obstacles Plaintiffs must overcome.

Plaintiffs have not shown that their appeal has significant merit, and this failure is fatal to their present motion. As the Seventh Circuit has recognized, "a party seeking a stay pending appeal . . . must show that it has a significant probability of success on the merits."

9

*Hinrichs v. Bosma*, 440 F.3d 393, 396 (7th Cir. 2006); *see also In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1301 (7th Cir. 1997) (the movant must "demonstrate a substantial showing of likelihood of success, not merely the possibility of success" and "[b]ecause the Claimants have not met their threshold burden to show likelihood of success, we affirm the district court's denial of the stay").

This Court certainly does not mean to suggest that Plaintiffs' appeal is quixotic, nor does the Court suggest that Plaintiffs' appeal is a futile bid. If the Court is missing an issue, incorrectly interpreting case law or misunderstanding an argument, it certainly welcomes guidance from the Seventh Circuit. However, in this Court's view, Plaintiffs' chances of prevailing on appeal are *de minimis*.

**B. Other factors**

Given the Court's ruling, it need not address the remaining factors in detail. Courts have previously held that where the movant fails to make to make the requisite showing of likelihood of success, the analysis must "end there" and the stay must be denied. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.*, 2010 WL 2292932, at *3 (E.D. Wis. June 3, 2010) (citing *In re Forty-Eight Insulation*, 115 F.3d at 1301 ("if the movant does not make the requisite showings on either [the likelihood of success or the irreparable harm] factors, the court's inquiry into the balance of harms is unnecessary, and the stay should be denied without further analysis.")).

However, the Court would be remiss not to mention that the State has presented evidence suggesting that Plaintiffs' predictions of harm are overstated. As the State highlights, the actual profit losses stemming from the Fee Reduction amount to only $2,500 to $5,000 per year per

pharmacy. Moreover, the State has put forth evidence that Indiana pharmacies have previously received reimbursement rates comparable to what they now receive after the Fee Reduction, yet Indiana still maintained an extremely high participation in the Medicaid program during this period. (Dkt. 61 at 8). Finally, without the Fee Reduction, the State will have to implement other measures that will allow FSSA to hit its savings target which was ordered by the Governor. *See Walgreen Co.*, 769 N.E.2d at 169 (public interest favored denying injunction where reimbursement rate reductions were made to shore up Medicaid budget, even if it resulted a "handful of store closures and potential discontinuation of some special services"). Importantly, here, some budget-induced pain is unavoidable. The remaining factors are not as cut-and-dried as Plaintiffs assert. Employing the "sliding scale" approach endorsed by the Seventh Circuit, this Court simply cannot find that a stay/injunction is warranted pending the appeal.

*Conclusion*

In the face of binding precedent, the Court must **DENY** Plaintiffs' Emergency Motion for Stay/Injunction Pending Appeal" (Dkt. 63) with respect to the Fee Reduction itself. However, the Court **GRANTS** Plaintiffs' request that the State be enjoined during the pendency of the appeal from seeking damages, including the recoupment of the difference in rates during the time the temporary restraining order was in effect. Plaintiffs raised this argument in their opening brief, and the State failed to respond, thus waiving the issue. *Cosby v. Purdue Univ.,* 2010 WL 2838377, at *6 (N.D. Ind. July 16, 2010) (failure to address issue in response brief waives issue). With respect to the Fee Reduction, Plaintiffs may renew their request for a stay in the Seventh Circuit Court of Appeals.

SO ORDERED.

Date: 10/07/2011

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution to:

Mark W. Bina
KRIEG DEVAULT LLP
mbina@kdlegal.com

Randall R. Fearnow
KRIEG DEVAULT LLP
rfearnow@kdlegal.com

Ryan Michael Hurley
BAKER & DANIELS - Indianapolis
ryan.hurley@bakerd.com

Harmony A. Mappes
BAKER & DANIELS - Indianapolis
harmony.mappes@bakerd.com

Debra Ann Mastrian
KRIEG DEVAULT LLP
dmastrian@kdlegal.com

Scott Stuart Morrisson
KRIEG DEVAULT LLP
smorrisson@kdlegal.com

Kate E. Shelby
INDIANA ATTORNEY GENERAL
kate.shelby@atg.in.gov